UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| TREIZY TREIZON LOPEZ,<br>    *Plaintiff*, | :<br>:<br>: |
| v. | :    No. 3:18-CV-1907 (KAD) |
| | : |
| SCOTT SEMPLE, ET AL.<br>    *Defendants*. | :<br>:    June 19, 2019 |

**MEMORANDUM OF DECISION RE: MOTION TO DISMISS (DE#19)**

**Statement of the Case**

    On November 23, 2018, the plaintiff, Treizy Treizon Lopez ("Plaintiff"), a state prisoner currently confined at the MacDougall-Walker Correctional Institution ("MWCI") in Suffield, Connecticut, filed a civil rights complaint ("Compliant") under 42 U.S.C. § 1983 against ten Connecticut Department of Correction ("DOC") officials. Compl. (DE#1). The Plaintiff claimed that these Defendants, in a variety of ways, violated his First, Fourth, Eighth and Fourteenth Amendment rights while he was confined at the Manson Youth Institution ("MYI") in Cheshire, Connecticut. *Id.* On January 4, 2019, by Initial Review Order the Court permitted the Plaintiff's Eighth Amendment claim to proceed against Captain Salvatore, Counselor Fortin, and Warden Butricks; his First Amendment claim to proceed against Correction Officer Garibaldi, and his Fourteenth Amendment claim to proceed against CO Garibaldi, Counselor Mala, Salvatore, and Lieutenant Eberle. Initial Review Order (DE#9) 20.

    On March 12, 2019, Garibaldi filed the instant motion to dismiss the First Amendment claim against him on the grounds that (1) the Plaintiff has failed to state a plausible claim for relief under Federal Rule of Civil Procedure 12(b)(6), and (2) the claim is barred by the doctrine of qualified immunity. Mot. to Dismiss (DE#19); Mem.

of Law in Supp. of Def. Garibaldi's Mot. to Dismiss ("Def.'s Mem.") (DE#19-1). The Plaintiff file his opposition to the motion on June 3, 2019. Obj. to Def.'s Mot. to Dismiss ("Pl.'s Obj.") (DE#28). For the following reasons, the motion to dismiss is GRANTED.

**Standard of Review**

To survive a motion to dismiss under Rule 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* The plausibility standard is not a probability requirement; the complaint must show, not merely allege, that the plaintiff is entitled to relief. *See id.*

The Court must accept as true the factual allegations in the complaint and draw all reasonable inferences in the plaintiff's favor. *Ashcroft*, 556 U.S. at 678. This principle does not, however, apply to the legal conclusions that the plaintiff draws in the complaint. *Id.*; *Bell Atlantic Corp.*, 550 U.S. at 555; *see also Amaker v. New York State Dept. of Corr. Servs.*, 435 F. App'x 52, 54 (2d Cir. 2011) (same). Accordingly, the Court is not "bound to accept conclusory allegations or legal conclusions masquerading as factual conclusions." *Faber v. Metro. Life Ins. Co.*, 648 F.3d 98, 104 (2d Cir. 2011) (quoting *Rolon v. Henneman*, 517 F.3d 140, 149 (2d Cir. 2008) (internal quotation marks omitted)). Moreover, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Ashcroft*, 556 U.S. at 678 (citing *Bell Atlantic Corp.*, 550 U.S. at 555).

"Where . . . the complaint was filed *pro se*, it must be construed liberally with 'special solicitude' and interpreted to raise the strongest claims that it suggests." *Hogan v. Fischer*, 738 F.3d 509, 515 (2d Cir. 2013) (quoting *Hill v. Curcione*, 657 F.3d 116, 122 (2d Cir. 2011)). Nevertheless, a *pro se* complaint still must "state a claim to relief that is plausible on its face." *Mancuso v. Hynes*, 379 F. App'x 60, 61 (2d Cir. 2010) (quoting *Ashcroft,* 556 U.S. at 678).

**Facts and Procedural History**

The Court incorporates the following factual allegations in the Complaint as stated in the Initial Review Order:[1]

> In April of 2018, while being transferred from MYI to the Bridgeport Correctional Center ("BCC"), the Plaintiff was found to be in possession of compact discs ("CDs"), which are considered contraband. Compl. ¶ 88. A correction officer at BCC gave the Plaintiff an ultimatum of either revealing the identity of the person who gave him the CDs or receiving a Class A disciplinary report ("DR") for possession of contraband. *Id.* Because the Plaintiff was unwilling to cooperate with the staff, he was placed in segregation immediately upon his arrival at BCC. *Id.* The following day, the Plaintiff was released from segregation, and his Class A DR was reduced to a Class B DR. *Id.* at ¶ 89.
>
> On June 20, 2018, the Plaintiff was transferred from BCC back to MYI without notice that most of his personal property would be left behind at BCC. Compl. ¶¶ 14-15. He asked Correction Officer White why he had not been provided with all of his property. *Id.* at ¶ 17. White told the Plaintiff that, when the rest of his property arrives from BCC, it would have to be inspected by Correction Officer Lis because the Plaintiff was previously found to be in possession of contraband. *Id.* The Plaintiff signed for the property that had arrived and proceeded to his housing unit. *Id.*
>
> The next day, the remaining property arrived at MYI. Compl. ¶ 18. Although it had already been inspected at BCC and cleared of any contraband, Correction Officer White conducted another search and found a one-dollar bill, another contraband item. *Id.* at ¶¶ 19-20. The bill was discovered in a manila envelope that belonged to the Plaintiff. *Id.* at ¶ 21.

---

[1] The Court includes only those facts concerning the Plaintiff's First Amendment retaliation claim against Garibaldi. The facts against the remaining defendants are not germane to this ruling.

After White's search, the Plaintiff's property was stored in the MYI storage room. *Id.* at ¶ 19.

On June 26, Officer Lis conducted another "targeted search" of the Plaintiff's property, even though it had been stored in the storage room and was only accessible to MYI staff. Compl. ¶¶ 23-24. As a result of the search, the Plaintiff was brought to segregation and placed on administrative detention pending a security risk group ("SRG") affiliation. *Id.* at ¶ 26. He received a DR for the SRG affiliation, and Officer White issued him a DR for possession of contraband for the one-dollar bill that was discovered in his personal items. *Id.* at ¶¶ 26-27. The Plaintiff was placed in segregation, but he never received copies of the DRs or any other written notice of the allegations. *Id.* at ¶¶ 29-30.

While housed in segregation at MYI, the Plaintiff asked Correction Officer Garibaldi for copies of the DRs for his review. Compl. ¶ 31. He also requested that White and Lis be interviewed as witnesses for his disciplinary hearing. *Id.* Garibaldi denied both requests but told the Plaintiff that he would dismiss the DRs if the Plaintiff gave him information on how CDs were being smuggled into MYI. *Id.* The Plaintiff refused to provide any information to Garibaldi and told him that he needed Lis's and White's testimony and copies of the DRs for his defense. *Id.* at ¶¶ 31-32. Garibaldi replied, "[Correction Officers] cannot be witnesses and there's no need for you to see any evidence because no matter what we're going to make sure the [disciplinary hearing officer] smokes[2] you since you wanna make [our] job harder." *Id.* at ¶ 32. Garibaldi also told the Plaintiff that a DR for SRG affiliation could not be challenged unless it is the inmate's first offense and that, if he does not plead guilty to that DR, he would receive another DR for disobeying a direct order. *Id.* at ¶ 33.

Because of what Garibaldi told him, the Plaintiff pleaded guilty to the SRG DR out of fear of receiving another DR for disobeying a direct order. Compl. ¶ 34. He pleaded not guilty to the contraband DR issued by White, [but was later found guilty after a hearing]. *Id.* at [¶¶ 35, 43].

\* \* \*

As a result of both guilty findings, the Plaintiff received as sanctions twenty-eight days of punitive segregation and 115 days loss of phone and commissary privileges. Compl. ¶¶ 49-50. The Plaintiff spent twenty-two of those days on administrative detention and the remaining six days on transfer detention, awaiting his transfer to the SRG program. *Id.* at ¶ 51.

---

[2] The Plaintiff interpreted the term "smokes" to mean an excessive sanction for the DR. Compl. ¶ 32.

Initial Review Order 2-6.

In permitting the Plaintiff's First Amendment retaliation claim to proceed against Garibaldi, the Court ruled that (1) the Plaintiff's refusal to cooperate with MYI officials in their investigation regarding the smuggling of CDs into the facility was a constitutionally protected activity, and (2) Garibaldi's threat to ensure that the Plaintiff received excessive punishment for his DRs was sufficient to show adverse action in retaliation for the Plaintiff's refusal to cooperate. Initial Review Order at 13 (citing *Burns v. Martuscello*, 890 F.3d 77, 89 (2d Cir. 2018)). Garibaldi now challenges the second conclusion with respect to the retaliation claim.[3]

**Discussion**

Here, a plausible First Amendment retaliation claim requires the Plaintiff to establish that (1) he engaged in protected speech or conduct, (2) the defendant, Garibaldi, took adverse action against him, and (3) there was a causal connection between the protected speech or conduct and the adverse action. *Holland v. Goord*, 758 F.3d 215, 225 (2d Cir. 2014)); *see also Espinal v. Goord*, 558 F.3d 119, 128 (2d Cir. 2009). Courts consider prisoner retaliation claims "with skepticism and particular care," because "virtually any adverse action taken against a prisoner by a prison official-even those otherwise not rising to the level of a constitutional violation-can be characterized as a constitutionally proscribed retaliatory act." *Dawes v. Walker,* 239 F.3d 489, 491 (2d Cir.2001), *overruled on other grounds, Swierkiewicz \*237 v. Sorema N.A.,* 534 U.S. 506, 122 S.Ct. 992, 152 L.Ed.2d 1 (2002). *See also, Alicea v. Howell,* 387 F. Supp. 2d 227,

---

[3] The mere fact that the Court did not dismiss the Plaintiff's claim *sua spone* in its Initial Review Order, pursuant to 28 U.S.C. § 1915A(b)(1), does not mean that it cannot review the claim for facial plausibility following a properly filed motion to dismiss under Rule 12(b)(6). *See Fleurizard v. City of New Haven*, No. 3:16-CV-1206 (JCH), 2017 WL 4273614, at *3 (D. Conn. Sept. 26, 2017).

5

237 (W.D.N.Y. 2005)(same).

In this case, Garibaldi does not dispute that the Plaintiff's refusal to cooperate in the investigation regarding the smuggling of CDs into MYI was constitutionally protected activity. He contends, however, that his alleged threats to ensure the Plaintiff received excessive punishment for the DRs and to issue another DR against the Plaintiff if the Plaintiff pleaded not guilty to the SRG affiliation DR do not amount to adverse action as a matter of law. Alternatively, Garibaldi asserts that he is entitled to qualified immunity. The Plaintiff counters that Garibaldi's threats do constitute an adverse action and further that Garibaldi should not be afforded qualified immunity for violating his First Amendment right to free speech.

"In the prison context, 'adverse action' is objectively defined as conduct 'that would deter a similarly situated individual of ordinary firmness from exercising . . . constitutional rights.'" *O'Diah v. Cully*, No. 08-CIV-941 (TJM/CFH), 2013 WL 1914434, at *9 (N.D.N.Y. May 8, 2013) (quoting *Davis v. Goord*, 320 F.3d 346, 353 (2d Cir. 2003)). "[A]llegations of *de minimis* acts of retaliation are not cognizable" in a § 1983 action. *Fields v. Connecticut Dep't of Corr.*, No. 3:04-CV-1245 (WWE) (HBF), 2006 WL 1806184, at *4 (D. Conn. June 29, 2006) (citing *Thaddeus-X v. Blatter*, 175 F.3d 378, 397 (6th Cir. 1999)). "[P]risoners[4] are required to tolerate more serious conduct before stating a retaliation claim." *Dean v. Lantz*, No. 3:08-CV-749 (DJS), 2009 WL 2151173, at *8 (D. Conn. July 17, 2009). Thus, insulting language or disrespectful

---

[4] State judicial records show that the Plaintiff was a pretrial detainee, not a prisoner, at the time of the alleged conduct. *See State v. Lopez*, No. FBT-CR15-0284036-T (Conn. Super. Ct. Aug. 16, 2018). He was later sentenced in August 2018 to thirty years in prison. *Id.* Nevertheless, courts in this Circuit apply the same First Amendment retaliation standard to both prisoners and pretrial detainees. *See Gomez v. Cty. of Westchester*, 649 F. App'x 93, 96 (2d Cir. 2016); *Booker v. City of New York*, No. 17-CV-7035 (BCM), 2018 WL 4616048, at *3 (S.D.N.Y. Sept. 26, 2018).

6

remarks directed at a prisoner are insufficient to establish adverse action under the retaliation standard. *Id.* "Under some circumstances, verbal threats may constitute adverse action, depending on their degree of specificity and the context in which they are uttered." *King v. McIntyre*, No. 9:11-CV-1457 (DNH), 2015 WL 1781256, at *21 (N.D.N.Y. Apr. 8, 2015) (quoting *Bumpus v. Canfield*, 495 F. Supp. 2d 316, 326 (W.D.N.Y. 2007)). "[V]ague limitations of some unspecified harm generally will not rise to the level of adverse action for the purpose of a First Amendment retaliation claim." *Bumpus*, 495 F. Supp. 2d at 326; *see also Dawes v. Walker*, 239 F.3d 489, 493 (2d Cir. 2001) ("Not every unnecessary statement of a prison guard regarding an inmate's exercise of free speech violates the First Amendment"), *overruled on other grounds by Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 508 (2002).

In this case, the Plaintiff claims that Garibaldi retaliated against him by threatening to ensure that the disciplinary hearing officer will "smoke" him for his DRs after the Plaintiff refused to provide information in furtherance of the CD investigation. Under the circumstances alleged and upon review of the law of this Circuit, the Court agrees with Garibaldi that this threat, alone, does not amount to retaliation under the First Amendment. Indeed, courts in this Circuit have oft rejected similarly vague threats as insufficient to constitute adverse action for purposes of a retaliation claim. *See King*, 2015 WL 1781256, at *21 (threats from prison official that plaintiff would "have a hard time" at facility and would receive "special treatment" while on keeplock not adverse actions for purposes of retaliation claim); *Torres v. Wright*, No. 3:17-CV-1919 (JAM), 2018 WL 1175408, at *5 (D. Conn. Mar. 6, 2018) (threatening to place plaintiff in protective custody insufficient to state retaliation claim); *Kemp v. LeClaire*, No. 03-CV-

844S (WMS), 2007 WL 776416, at *15 (W.D.N.Y. Mar. 12, 2007) (threats from official that plaintiff's "day [was] coming," that he would "be sent to [his] mother in a black box" and that he would "get [his] black ass kicked" insufficient to establish retaliation claim); *Bartley v. Collins*, No. 95-CIV-10616, 2006 WL 1289256, at *6 (S.D.N.Y. May 10, 2006) (verbal threats such as "we going to get you, you better drop the suit" do not rise to level of adverse action); *Alicea v. Howell*, 387 F. Supp. 2d 227, 237-38 (W.D.N.Y. 2005) (prison official's statement to plaintiff about there being "no secrets in prison" and that plaintiff would "have to pay the consequences" for filing grievance do not state retaliation claim). In sum, Garibaldi's alleged threat to ensure excessive punishment for the DRs, would deter a similarly situated inmate from exercising his constitutional rights.

The Court notes that the Plaintiff does not allege that Garibaldi carried through on his threat, despite the Plaintiff's continued refusal to provide information for the CD investigation. In fact, as a result of both DRs, the plaintiff received less than thirty days in punitive segregation, six of which were for transfer purposes. The fact that Garibaldi did not carry through on his threat to "smoke" the Plaintiff, while not dispositive, weighs against a finding that his alleged threat constitutes adverse action. *See Alicea*, 387 F. Supp. 2d at 237.

The Plaintiff's reliance on *Kerman v. City of New York*, 251 F.3d 229 (2d Cir. 2001), is misplaced. He argues that, in *Kerman,* the Second Circuit held that an officer's comment to the plaintiff that he "would teach [the plaintiff] a lesson and give him something to sue for" constituted adverse action for purposes of a First Amendment retaliation claim. However, in *Kerman,* the protected conduct was the plaintiff's derogatory remarks directed at the police during his arrest and the search of his home,

8

and the claimed adverse action taken by police was confining the plaintiff in Bellevue Hospital, not the threat to "teach [the plaintiff] a lesson." *See Kerman*, 251 F.3d at 241. The Second Circuit relied upon the officer's threat as evidence that the officer's action was *motivated* by retaliation. *Id.* at 242. Here, by contrast, the alleged adverse action was the threat itself, which, alone, as held above, is insufficient to constitute retaliation.

The plaintiff also asserts that Garibaldi's false threat to issue him a third DR if he pleaded not guilty to the SRG affiliation DR also amounts to an adverse action. A verbal threat to file a false DR against a prisoner could amount to adverse action for purposes of a First Amendment retaliation claim. *See Hill v. Laird*, No. 06-CV-126 (JS) (ARL), 2014 WL 1315226, at *8 (E.D.N.Y. Mar. 31, 2014); *Ahlers v. Grygo*, No. 02-CV-3256 (JG) (LB), 2009 WL 3587483, at *6 (E.D.N.Y. Oct. 27, 2009). However, here, Plaintiff does not allege any causal connection between Garibaldi's threat to issue the Plaintiff a false DR and the Plaintiff's constitutionally protected conduct in withholding information from the MYI investigators. Per the Complaint, Garibaldi's threat was in response to the Plaintiff's SRG affiliation DR, which resulted from Officer Lis's "targeted search" of the Plaintiff's property. *See* Compl. ¶¶ 23-26. The allegations do not identify any relation between these events on the one hand and the CD investigation at MYI on the other. Therefore, even if this threat was adverse action, Garibaldi's threat to issue the Plaintiff a false DR does not state a First Amendment retaliation claim.

Alternatively, the Court agrees that, even if the Plaintiff's allegations give rise to reasonable inference that Garibaldi's conduct amounted to retaliation, the claim is barred under the doctrine of qualified immunity. The doctrine of qualified immunity balances "the need to hold public officials accountable when they exercise power irresponsibly

[with] the need to shield officials from harassment, distraction, and liability when they perform their duties reasonably." *Pearson v. Callahan*, 555 U.S. 223, 231 (2009). "Qualified immunity protects public officials from liability for civil damages when one of two conditions is satisfied: (a) the defendant's action did not violate clearly established law, or (b) it was objectively reasonable for the defendant to believe that his action did not violate such law." *Garcia v. Does*, 779 F.3d 84, 92 (2d Cir. 2015) (quoting *Russo v. City of Bridgeport*, 479 F.3d 196, 211 (2d Cir. 2007)).

"To determine whether the relevant law was clearly established, [the Court] consider[s] the specificity with which a right is defined, the existence of Supreme Court or Court of Appeals case law on the subject, and the understanding of a reasonable officer in light of preexisting law." *Terebesi v. Torreso*, 764 F.3d 217, 231 (2d Cir. 2014). "The law may be clearly established if 'decisions from [the Second Circuit] or other circuits clearly foreshadow a particular ruling on the issue.'" *Tuttle v. Semple*, No. 3:17-CV-2037 (JAM), 2018 WL 2088010, at *4 (D. Conn. May 4, 2018) (quoting *id.*). "Although there need not be 'a case directly on point,' it must nonetheless be clear that 'existing precedent [has] placed the . . . constitutional question beyond debate.'" *Id.* (quoting *Mullenix v. Luna*, 136 S. Ct. 305, 308 (2015)). "[T]he clearly established law must be 'particularized' to the facts of the case." *White v. Pauly*, 137 S. Ct. 548, 552 (2017) (quoting *Anderson v. Creighton*, 483 U.S. 635, 640 (1987)).

"Qualified immunity 'provides ample protection to all but the plainly incompetent or *those who knowingly violate the law*.'" *Vincent v. Yelich*, 718 F.3d 157, 166 (2d Cir. 2013) (quoting *Malley v. Briggs*, 475 U.S. 335, 341 (1986)) (emphasis in original); *see also Jackler v. Byrne*, 658 F.3d 225, 243 (2d Cir. 2011) (mere mistake in performance of

official duty does not deprive official of qualified immunity defense). However, the inquiry is primarily based on objective factors. *Vincent*, 718 F.3d at 166 (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818-19 (1982)). "Absent 'extraordinary circumstances, [i]f the law was clearly established, the immunity defense ordinarily should fail, since a reasonably competent public official should know the law governing his conduct.'" *Id.* (quoting *Harlow*, 457 U.S. at 818-19).

The Second Circuit has cautioned district courts about resolving issues of qualified immunity at the pleading stage. *See Garcia*, 779 F.3d at 97. The availability of the doctrine "is often fact-intensive, and if facts are in dispute, a court may need to have a jury resolve them before it can decide whether qualified immunity bars a plaintiff's claim . . . or, at least, it may require a full record on a motion for summary judgment to determine if there is a factual issue." *Birch v. City of New York*, 184 F. Supp. 3d 21, 28 (E.D.N.Y. 2016) (citation omitted); *see also Armstrong v. State of Conn. Dep't of Children and Families Juvenile Training School*, No. 3:04-CV-360 (WWE), 2004 WL 1151592, at *2 (D. Conn. May 12, 2004) (qualified immunity more appropriately raised by way of motion for summary judgment). "However, if, upon drawing every factual inference in favor of the plaintiff, the question is purely the state of law at the time of a defendant's allegedly tortious conduct, so that the court can determine whether a reasonable state [official] should have known that what he was doing violated the law, then a court can determine the availability of qualified immunity on a motion to dismiss under Rule 12(b)(6)." *Birch*, 184 F. Supp. 3d at 28. Indeed, the district court should consider the application of qualified immunity at the earliest stage possible because the purpose of the doctrine is to protect state officials from having to defend against civil

liability claims when they perform their duties reasonably. *Id.* (citing *Pearson v. Callahan*, 555 U.S. 223, 232 (2009)).

While threatening to ensure excessive punishment in response to a prisoner's refusal to cooperate in an internal investigation is certainly not appropriate behavior, a reasonable official in Garibaldi's position cannot be expected to know that such a verbal threat would constitute a First Amendment violation. As shown above, courts in this Circuit have rejected claims that similar verbal threats establish adverse action for purposes of the First Amendment. Thus, whether threatening to ensure excessive punishment for a disciplinary violation, can constitute First Amendment retaliation is not "beyond debate." *Mullenix v. Luna,* 136 S. Ct. at 308. Had the Plaintiff alleged facts showing that Garibaldi carried through on his threat by taking affirmative steps to ensure he received a hefty sanction for his DRs, Garibaldi would not be shielded from liability. However, the Plaintiff has not given any indication that Garibaldi carried through on his threat, and the punishment he actually received for both DRs, twenty-eight days in punitive segregation and 115 days loss of phone and commissary privileges, do not support such an inference. Because Garibaldi did not violate clearly established federal law in allegedly threatening the Plaintiff, he is entitled to qualified immunity.

**Conclusion**

The motion to dismiss the Complaint (DE#19) is GRANTED. The First Amendment retaliation claim against Garibaldi is DISMISSED. The case may proceed on all remaining constitutional claims.[5] The Defendants shall file their response to those claims within twenty-one (21) days from the date of this Order.

---

[5] The Court, in its Initial Review Order, analyzed the Plaintiff's conditions of confinement claim under the Eighth Amendment and his procedural due process claim under *Sandin v. Conner*, 515 U.S. 472, 484

**SO ORDERED.**

Dated this 19th day of June 2019 at Bridgeport, Connecticut.

                                                                Kari A. Dooley
                                                                United States District Judge

---

(1995). Initial Review Order at 14-18. After further review, the Court recognizes that, because the Plaintiff was a pretrial detainee and not a prisoner at the time of the alleged violations, his claims are more appropriately analyzed under the less stringent Fourteenth Amendment due process standard, as set forth in *Darnell v. Pineiro*, 849 F.3d 17 (2d Cir. 2017). To prevail on a conditions of confinement claim, a pretrial detainee must establish "that the defendant-official acted intentionally to impose the alleged condition, or recklessly failed to act with reasonable care to mitigate the risk that the condition posed to the pretrial detainee even though the defendant-official knew, or should have known, that the condition posed an excessive risk to health or safety." *Id.* at 35. To establish a procedural due process violation, a pretrial detainee need not show that he was subjected to an "atypical and significant hardship" under *Sandin*, 515 U.S. at 484, but "must show that he was not given notice or an opportunity to be heard before being placed in isolation." *Johnston v. Maha*, 845 F. Supp. 2d 535, 537 (W.D.N.Y. 2012). The facts alleged in the Complaint are sufficient to permit the conditions of confinement and procedural due process claims to proceed under these standards.