UNITED STATES DISTRICT COURT

DISTRICT OF CONNECTICUT

TREIZY TREIZON LOPEZ,

    Plaintiff,

v.                                                    Case No.: 3:18cv1907 (KAD)

SCOTT SEMPLE, et al.,

    Defendants.

### RULING ON DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

On November 23, 2018, the Plaintiff, Treizy Treizon Lopez, a sentenced inmate currently confined at the MacDougall-Walker Correctional Institution ("MWCI"), brought this civil rights action *pro se* under 42 U.S.C. § 1983 against numerous Connecticut Department of Correction ("DOC") officials in their individual and official capacities asserting violations of his First, Fourth, Eighth, and Fourteenth Amendment rights while he was confined at the Manson Youth Institution ("MYI") and MWCI. On initial review, the Court permitted the case to proceed on Lopez's Eighth Amendment conditions of confinement claims against Capt. Salvatore, Counselor Fortin, and Warden Butricks in their individual capacities; his First Amendment retaliation claim against CO Garibaldi in his individual capacity; and his Fourteenth Amendment procedural due process claim against CO Garibaldi, Counselor Mala, Captain Salvatore, and Lt. Eberle in their individual and official capacities. Initial Review Order ("IRO") at 20 (ECF No. 9). The Court dismissed all other claims and terminated all other defendants. *Id.* The Court later granted a motion to dismiss Lopez's First Amendment retaliation claim against CO Garibaldi. (ECF Nos. 19, 29).

On December 15, 2020, Defendants filed a Motion for Summary Judgment on the basis that Lopez failed to exhaust his administrative remedies and on the merits of Fourteenth Amendment procedural due process claim. (ECF No. 67). Under District of Connecticut Local Rule 7(a)(2), Lopez's opposition to the motion for summary judgment was due on January 5, 2020. To date, Lopez has not filed any opposition to Defendants' motion for summary judgment. Nor has he sought an extension of time within which to do so.

For the reasons that follow, the Motion for Summary Judgment is GRANTED.

**Facts**[1]

On June 22, 2018, while Lopez was housed at MYI, Officer White located a dollar bill in Lopez's, property. Compl. at ¶¶ 14-16, 18; Defs.' Rule 56(a)1 at ¶ 1; Defs.' Ex. D at p. 005.

On June 26, Lopez received a disciplinary report for Security Risk Group ("SRG") affiliation based on SRG identifiers found in his property as a result of a shakedown. Defs.' Ex. C at 003, 006. On that date, Officer White issued a disciplinary report to Lopez for contraband. Defs.' Rule 56(a)1 at ¶ 2; Defs.' Ex. C at 009. Correctional Officer Wolby delivered a copy of this disciplinary report to Plaintiff on June 26, 2018 at approximately 2:00 PM. Defs.' Rule 56(a)1 at ¶ 3; Defs.' Ex. D at p. 021.

Lopez was then placed in segregation awaiting his hearing for the disciplinary charges. Defs.' Rule 56(a)1 at ¶ 4; Defs.' Ex. D at pp. 001, 019.

---

[1] The facts are taken from the Defendants' Local Rule 56(a)1 Statement. (ECF No. 67-2) ("Defs.' Rule 56(a)1"). Local Rule 56(a)1 provides: "Each material fact set forth in the Local Rule 56(a)1 Statement and supported by the evidence will be deemed admitted (solely for purposes of the motion) unless such fact is controverted by the Local Rule 56(a)2 Statement required to be filed and served by the opposing party in accordance with this Local Rule, or the Court sustains an objection to the fact." Defendants informed Lopez of this requirement in their Notice to *Pro Se* Litigant. (ECF No. 67-3). Because Lopez has not filed a response to Defendants' statement of facts in compliance with Local Rule 56(a)2, Defendants' Rule 56(a)1 statement of facts may be deemed admitted where supported by the evidence. The Court also recites the allegations in the complaint as set forth in the initial review order as necessary.

Officer Garibaldi was the investigator for the disciplinary report contraband charges. Defs.' Rule 56(a)1 at ¶ 5; Defs.' Ex. C, Att. 1. Lopez pleaded not guilty to the contraband charges. *Id.* at p. 008.

On June 29, 2018, Lopez admitted to his SRG affiliation on the Disciplinary Investigation Report. *Id.* at p. 005. Lopez also signed a statement indicating that he believed he was being framed with regard to the contraband ticket and that correctional officers had set him up by placing the dollar bill in his property. Defs.' Rule 56(a)1 at ¶¶ 6-7; Defs.' ex. C, Att. 1 at p. 011.

Lopez was aware of the charges and evidence against him before his hearing. Defs.' Rule 56(a)1 at ¶ 8; Compl. at ¶ 30 (plaintiff was notified of the pending charges); Defs.' Ex. C, Att. 1 at pp. 011, 014 (statement written with Advisor Mala on June 29; interview with Advisor Gray given July 9).

On his statement form, Lopez had checked off "NO" to the entry "Inmate requests witness(es)." Defs.' Rule 56(a)1 at ¶ 9; Defs.' Ex. C, Att. 1 at pp. 011. Lopez signed and dated the statement form. Defs.' Rule 56(a)1 at ¶ 10; Defs.' Ex. C Att, 1 at pp. 011.

Lopez was initially assigned Correctional Counselor Mala as his advisor but was later assigned to Correctional Counselor Gray before the hearing. Defs.' Rule 56(a)1 at ¶ 11; Defs.' Ex. C, Att. 1 at p. 011 (Advisor: Mala); p. 014 (Advisor: Gray).

On July 9, 2018, Lopez met with Correctional Counselor Gray, who wrote a summary of their meeting. Defs.' Rule 56(a)1 at ¶ 12; Defs.' Ex. C, Att. 1 at p. 014. Gray wrote that Lopez stated he did not know how the dollar bill got in his property. Defs.' Rule 56(a)1 at ¶ 13; Defs.' Ex. C at p. 014. Lopez signed this form. *Id.*

Lopez's hearing for the contraband disciplinary report and SRG affiliation took place on July 10, 2018, with Lieutenant Eberle as the hearing officer. Defs.' Rule 56(a)1 at ¶¶ 14, 15; Defs.' Ex. C, Att. 1 at pp. 001-002; 07-08. Lopez pleaded guilty at the hearing to the SRG affiliation. *Id.* at pp. 001-002.

Relevant to the contraband charges, Lieutenant Eberle was provided with a copy of the disciplinary report, a photograph of the contraband (a dollar bill), and copies of the incident report, staff documentation, and Lopez's written statement and statement to his advisor. Defs.' Rule 56(a)1 at ¶ 15; Ex. D at ¶ 12; Ex. D, Att. 1 at p. 009 (MYI incident report about contraband).

At the hearing, Lopez testified that he had no way of getting the money as he does not receive visits. Defs.' Rule 56(a)1 at ¶ 16; Defs.' Ex. D at ¶ 14. Based upon the evidence presented at the hearing, Lieutenant Eberle determined Lopez should be found guilty of the contraband disciplinary report. Defs.' Rule 56(a)1 at ¶ 16; Defs.' Ex. D at ¶ 18; *see* Ex. D, Att. 1 at p. 008.

Lt. Eberle has averred that neither Officer Lis' nor Officer White's testimony would have changed her determination of Lopez's guilt, because she had reviewed White's written statements, which indicated to her that Lopez should be found guilty. Defs.' Rule 56(a)1 at ¶ 17; Defs.' Ex. C at ¶ 16.

At the conclusion of the hearing, Lopez was given notice of Lieutenant Eberle's decision and the sanctions he received. Defs.' Rule 56(a)1 at ¶ 18; Defs.' Ex. C at ¶ 19.

On July 24, Lopez was transferred from MYI to MWCI, where he remained housed until November 6, 2018. Defs.' Rule 56(a)1 at ¶ 19; Defs.' Ex. A at ¶ 7.

Lopez filed an appeal of his disciplinary report for contraband that was received by the grievance coordinator at MWCI on September 19, 2018, though he dated the form August 2, 2018. Defs.' Rule 56(a)1 at ¶ 25; Defs.' Ex. B, Att. 2 at p. 003. This appeal was rejected as untimely for the stated reason that it was filed more than 15 days after the hearing determination. Defs.' Rule 56(a)1 at ¶ 26; Defs.' Ex. B, Att. 2 at p. 002-003; *see* A.D. 9.6(10) (providing for 15 days for inmate to file appeal to disciplinary guilty finding). Lopez's disciplinary appeal asserted that he should not have been given the disciplinary report and that he did not know where the dollar bill came from. Defs.' Rule 56(a)1 at ¶ 29; Defs.' Ex. B, Att. 2 at p. 002.

On August 6, Lopez wrote an inmate request form to Counselor Stanley at MWCI, in which he claimed that he had been housed in unconstitutional conditions of confinement at MYI from June 26, 2018 until July 24, 2018. Defs.' Rule 56(a)1 at ¶ 20; Defs.' Ex. A, Att. 2 at 038. Counselor Supervisor Stanley responded to Lopez's grievance by explaining that grievances needed to be submitted to the Grievance Coordinator and attaching a Grievance form. Defs.' Rule 56(a)1 at ¶ 21; Defs.' Ex. A, Att. 2 at p. 038.

Lopez did not, however, file a Level-1 Grievance regarding the conditions of his confinement while housed in segregation from June 26 to July 24, 2018 at MYI until October 10, 2018. Defs.' Rule 56(a)1 at ¶ 22; See Defs.' Ex. A at ¶ 10; Ex. A, Att. 2 at pp. 35-37. This grievance, assigned number IGP # 137-19-104, was rejected as untimely because it was filed more than 30 days after the occurrence or discovery of the cause of the grievance. Defs.' Rule 56(a)1 at ¶ 23; Defs' Ex. A at ¶¶ 10-12; Ex. A, Att. 2 at pp. 35-38; *see* A.D. 9.6(6)(C).[2]

Because the conditions of confinement that Lopez complained about extended until July 24, 2018, Lopez had until August 23, 2018 to timely file a Level-1 Grievance regarding these

---

[2] Attached as Defs.' Exhibit C, Attachment 1.

issues. Defs.' Rule 56(a)1 at ¶ 24; Defs.' Ex. A at ¶¶ 10-12; Ex. A, Att. 1, § 6. However, Lopez did not do so. Defs.' Rule 56(a)1 at ¶ 24; *see* Ex. A, Att. 2.

As Lopez's hearing occurred on July 10, 2018, Lopez had until August 9, 2018 to file a timely Level-1 Grievance regarding any due process violation arising from his disciplinary report. Defs.' Rule 56(a)1 at ¶ 29. He did not do so. *Id.*

Prior to filing this action, Lopez did not file any other grievances or appeals to address either any due process errors at his contraband hearing or the conditions of his confinement during his segregation at MYI. Defs.' Rule 56(a)1 at ¶ 30.

**STANDARD OF REVIEW**

A motion for summary judgment may be granted only where there is no genuine dispute as to any material fact and the moving party is entitled to judgment as a matter of law. Rule 56(a), Fed. R. Civ. P.; *see also Nick's Garage, Inc. v. Progressive Cas. Ins. Co.*, 875 F.3d 107, 113-14 (2d Cir. 2017). "A genuine issue of material fact exists if 'the evidence is such that a reasonable jury could return a verdict for the nonmoving party.'" *Nick's Garage*, 875 F.3d at 113-14 (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). Which facts are material is determined by the substantive law. *Anderson*, 477 U.S. at 248. "The same standard applies whether summary judgment is granted on the merits or on an affirmative defense…." *Giordano v. Market Am., Inc.*, 599 F.3d 87, 93 (2d Cir. 2010).

The moving party bears the initial burden of informing the court of the basis for its motion and identifying the admissible evidence it believes demonstrates the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Once the moving party meets this burden, the nonmoving party must set forth specific facts showing that there is a genuine issue for trial. *Wright v. Goord*, 554 F.3d 255, 266 (2d Cir. 2009). He cannot "rely on

conclusory allegations or unsubstantiated speculation' but 'must come forward with specific evidence demonstrating the existence of a genuine dispute of material fact." *Robinson v. Concentra Health Servs.*, 781 F.3d 42, 34 (2d Cir. 2015) (quotation marks and citation omitted). To defeat a motion for summary judgment, the nonmoving party must present such evidence as would allow a jury to find in his favor. *Graham v. Long Island R.R.*, 230 F.3d 34, 38 (2d Cir. 2000).

Although the court is required to read a self-represented "party's papers liberally and interpret them to raise the strongest arguments that they suggest," *Willey v. Kirkpatrick*, 801 F.3d 51, 62 (2d Cir. 2015), "unsupported allegations do not create a material issue of fact" and do not overcome a properly supported motion for summary judgment. *Weinstock v. Columbia Univ.*, 224 F.3d 33, 41 (2d Cir. 2000).

**DISCUSSION**

Defendants maintain that Lopez failed to exhaust his remedies on both his Eighth Amendment and his due process claims as required under the PLRA. Defs.' Mem. at 1, 9. Alternatively, they argue that the procedural due process claim fails on its merits.

**Exhaustion of Administrative Remedies**

The Prison Litigation Reform Act of 1996 ("PRLA"), which governs actions brought by prison inmates, requires prisoner to exhaust administrative remedies prior to filing a federal lawsuit regarding prison conditions.[3] 42 U.S.C. 42 US.C. § 1997e(a). Failure to exhaust is an affirmative defense under the Prisoner Litigation Reform Act, 42 U.S.C. § 1997e; *Jones v. Bock*, 549 U.S. 199, 217 (2007); and a defendant bears the burden to prove that an inmate did not

---

[3] Section 1997e(a) provides: "No action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted."

exhaust his or her remedies prior to filing the action in court. *See Johnson v. Mata*, 460 Fed. App'x 11, 15 (2d Cir. 2012) ("The defendants have the burden of showing that there is no genuine issue of material fact as to exhaustion that would preclude summary judgment."). Section 1997e(a) applies to all claims regarding prison life, *Porter v. Nussle*, 534 U.S. 516, 532 (2002), and it requires exhaustion of any available administrative remedies, regardless of whether they provide the relief the inmate seeks. *See Booth v. Churner*, 532 U.S. 731, 741 (2001). The Second Circuit has held that proper exhaustion under the PLRA is analyzed under the same principles of notice pleading, that is, the written complaint "must contain allegations sufficient to alert the defendants to the nature of the claim and to allow them to defend against it." *Johnson v. Testman*, 380 F.3d 691, 697 (2d Cir. 2004) (quoting *Freedom Holdings, Inc. v. Spitzer*, 357 F.3d 205, 234 (2d Cir. 2004)); *see also Boddie v. Bradley*, 129 F. App'x 658, 660-61 (2d Cir. 2005).

A claim is not exhausted until the inmate complies with all administrative deadlines and procedures. *See Woodford v. Ngo*, 548 U.S. 81, 90 (2006). Informal efforts to put prison officials on notice of inmate concerns do not satisfy the exhaustion requirement. *See Marcias v. Zenk*, 495 F.3d 37, 43 (2d Cir. 2007). If the deadline to file a grievance has passed, an unexhausted claim is barred from federal court. *See Woodford*, 548 U.S. at 95. Thus, "untimely or otherwise procedurally defective attempts to secure administrative remedies do not satisfy the PLRA's exhaustion requirements." *Ruggiero v. County of Orange*, 467 F.3d 170, 176 (2d Cir. 2006) (quoting *Woodford*, 548 U.S. at 83–84).

The exhaustion requirement, however, may be excused when the remedy is not available in practice even if it is "officially on the books." *See Ross v. Blake*, 136 S. Ct. 1850, 1858-59 (2016). This means that "an inmate is required to exhaust those, but only those, grievance

procedures that are 'capable of use' to obtain 'some relief for the action complained of.'" *Ross*, 136 S. Ct. at 1859 (quoting *Booth*, 532 U.S. at 738). In *Ross* the Supreme Court identified three circumstances under which exhaustion might be excused: (1) "when (despite what regulations or guidance materials may promise) it operates as a simple dead end—with officers unable or consistently unwilling to provide any relief to aggrieved inmates;" (2) when a procedure is "so opaque that it becomes, practically speaking, incapable of use;" or (3) "when prison administrators thwart inmates from taking advantage of a grievance process through machination, misrepresentation, or intimidation." *Id.* at 1859-60. "Whether an administrative remedy was available to a prisoner in a particular prison or prison system is ultimately a question of law, even when it contains factual elements." *Hubbs v. Suffolk Cty. Sheriff's Dep't*, 788 F.3d 54, 59 (2d Cir. 2015).

Administrative Directive 9.6

Administrative Directive 9.6 "provide[s] a means for an inmate to seek formal review of an issue relating to any aspect of an inmate's confinement that is subject to the Commissioner's authority[.]" A.D. 9.6(1). Administrative Directive 9.6(6) requires an aggrieved inmate to first seek informal resolution prior to filing a grievance. A.D. 9.6(6)(A). It provides that "the inmate shall submit a written request via CN 9601, Inmate Request Form" in the event that "the verbal option does not resolve the issue." *Id.* Administrative Directive 9.6(6)(C) specifically states that the inmate must include a copy of the Inmate Request Form (CN 9601) with the grievance (CN 9602) or an inmate must explain its absence.

The Level 1 Grievance must be filed within thirty calendar days from the date of the occurrence or discovery of the cause of the Grievance and should include a copy of the response to the written request to resolve the matter informally or explain why the response is not

attached. A.D. 9.6(6)(C). The Unit Administrator shall respond in writing to the Level 1 Grievance within thirty business days of his or her receipt of the Grievance. *See* A.D. 9.6(6)(I). The inmate may appeal the disposition of the Level 1 Grievance by the Unit Administrator or the Unit Administrator's failure to dispose of the grievance in a timely manner to Level 2. A.D. 9.6(6)(G), (I) & (K). A grievance returned without disposition due to a failure to comply with procedural requirements of Administrative Directive 9.6 may not be appealed. *See* A.D. 9.6(6)(G).

A Level 2 Appeal of a disposition of a Level 1 Grievance must be filed within five calendar days from the inmate's receipt of the decision on the Level 1 Grievance. *See* A.D. 9.6(6)(K). The Level 2 Appeal of the Unit Administrator's failure to dispose of the Level 1 Grievance in a timely manner must be filed within 65 days from the date the Level 1 Grievance was filed by the inmate. *See* A.D. 9.6(6)(M).

Level 2 Appeals of inmates confined in Connecticut correctional facilities are reviewed by the appropriate District Administrator. A.D. 9.6(6)(K). The District Administrator is required to respond to the Level 2 Appeal within thirty business days of receipt of the appeal. *See id.*

Level 3 appeals are restricted to challenges to department policy, the integrity of the grievance procedure or Level 2 Appeals to which there has been an untimely response by the District Administrator. A.D. 9.6(6)(L). A Level 3 appeal must be filed within five calendar days from the inmate's receipt of the decision on the Level 2 appeal. *See id.* A Level 3 Appeal of the District Administrator's failure to dispose of the Level 2 Appeal in a timely manner must be filed within 35 days of the filing of the Level 2 appeal. A.D. 9.6(6)(M). A Level 3 Appeal is reviewed by the Commissioner of Correction or his or her designee. A.D. 9.6(6)(L).

Relevant to disciplinary appeals, Administrative Directive 9.6(10) provides:

>A guilty finding received at a disciplinary hearing may be appealed by completing and depositing CN 9602, Inmate Administrative Remedy Form, in the Administrative Remedies box within 15 calendar days of the notice of decision. Form CN 9602, Inmate Administrative Remedy Form shall be reviewed by the District Administrator of the district where the disciplinary report was adjudicated. The District Administrator shall respond to any appeal within 15 business days of the receipt. The District Administrator shall not delegate the authority to respond to any disciplinary appeal. Disciplinary action resulting from a guilty plea shall not be subject to an appeal.
>
>The District Administrator may alter disciplinary action in any way that best serves the correctional objectives of the State of Connecticut. The decision of the District Administrator shall not be subject to further appeal.

<u>Eighth Amendment - Conditions of Confinement</u>

Lopez asserts that Defendants Salvatore, Fortin, and Butricks acted with deliberate indifference to his unconstitutional conditions of confinement during his 28 days in segregation at MYI between June 26, 2018 to July 24, 2018. IRO at 14-15. Lopez has also alleged that he was denied access to writing materials and grievance forms while housed in segregation at MYI, and that he was unable to file grievances until August 2, 2018, when he was provided forms and materials at MWCI. *Id.* at 8.

However, Lopez could have filed a Level-1 Grievance under Administrative Directive 9.6 until August 23, 2018, thirty days after his release from segregation, to complain about his conditions of confinement while in segregation. *See* A.D. 9.6 (C). The evidence submitted establishes that Lopez was aware of the administrative remedy process with respect to concerns regarding the conditions but he failed to file a grievance re: same until October 10, 2018. *See* Defs.' Rule 56(a)1 at ¶¶ 21-22; Defs.' Ex A at ¶¶ 10-12; Ex. A., Att. 2 at p. 038. Thus, the Defendants have demonstrated that Lopez failed to exhaust his conditions of confinement claims within the requisite period under Administrative Directive 9.6(6)(C). Furthermore, there is nothing in the present record from which to infer that Lopez should be excused from his PLRA filing requirement due to unavailability of his administrative remedies as contemplated by *Ross*,

136 S. Ct. at 1858-59. The record reflects that Lopez was informed that he could file a grievance with the Grievance Coordinator, and there is no indication that he was thwarted from filing his administrative remedies or that the remedy process operated as "a simple dead end." *See id.* Accordingly, the motion for summary judgment is GRANTED on Lopez's Eighth Amendment conditions of confinement claim due to nonexhaustion. *See Groomes v. Frazir*, No. 3:17CV1072 (JCH), 2018 WL 6519062, at *3 (D. Conn. Dec. 11, 2018) (granting summary judgment on ground that plaintiff had not exhausted his available administrative remedies prior to filing his action).

Procedural Due Process

Lopez asserts that Defendants Eberle, Salvatore, Mala, and Garibaldi violated his Fourteenth Amendment procedural due process rights in connection with his disciplinary hearing by failing to provide him with proper assistance, notice of the evidence against him, or an opportunity to call witnesses during the disposition of his contraband charges on his disciplinary report. IRO at 18 (noting Lopez's allegations that Defendants "prevented him from interviewing, and/or presenting testimony from, correction officers in support of his defense to the DR, and that Eberle based his guilty finding solely on the fact that the Plaintiff had previously been caught with contraband" were sufficient to state a plausible Fourteenth Amendment procedural due process claim.).[4]

Lopez filed an appeal of his disciplinary guilty finding on the contraband charge, but there is no evidence that he filed any administrative grievance asserting a due process violation in connection with the disciplinary hearing. *See* Defs.' ex. B, Att. 2 at p. 003. However, an appeal of a disciplinary finding may, in certain circumstances, constitute an exception to

---

[4] The Court notes that a "prison inmate has no general constitutional right to be free from being falsely accused in a misbehavior report." *Boddie v. Schnieder*, 105 F.3d 857, 862 (2d Cir. 1997) (citations omitted).

the exhaustion rule. *See Ramirez v. Allen*, No. 3:17-CV-1335 (MPS), 2018 WL 5281738, at *7 (D. Conn. Oct. 24, 2018). *See* Defs.' ex. B, Att. 2 at p. 002-003. But because Lopez's appeal was filed improperly as it was untimely, it cannot satisfy the exhaustion requirement. Moreover, Lopez's appeal asserted that he "had no clue" where the dollar bill came from or how it got into his property and that he should not have been found guilty. Notably it did not raise any concern that he had not received procedural due process. *See* Defs.' ex. B, Att. 2 at p. 003. Accordingly, the record establishes that Lopez failed to exhaust his procedural due process claim through the remedies available under Administrative Directive 9.6. Furthermore, there is no basis upon which to conclude that administrative remedies were "unavailable" as contemplated under *Ross* so as to excuse the exhaustion requirement under the PLRA. *See Ross*, 136 S. Ct. at 1858-59.

## CONCLUSION

For the foregoing reasons, the motion for summary Judgment (ECF No. 67) is GRANTED. The clerk is instructed to enter judgment in Defendants' favor and to close this case.

**SO ORDERED** this 7th day of June 2021 at Bridgeport, Connecticut.

\_\_\_/s/_____
Kari A. Dooley
United States District Judge